IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL No. 3:05-CR-240-P |
| RAKESH JYOTI SARAN (1) | § | |
| STACY FRED WORD (2) | § | |
| DAVID KAISER (3) | § | |
| LESLIE W. DAVIDOFF (4) | § | |
| CHERIE A. WORD (5) | § | |
| MARGIE MOLINA (7) | § | |
| GEORGE SCHMIDT (8) | § | |
| HEATHER R. ELLIOTT (14) | § | |

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JAN - 3 2008
CLERK, U.S. DISTRICT COURT
By _____
Deputy

## UNITED STATES' NOTICE OF RESTITUTION AMOUNTS

The United States files this Notice of Restitution Amounts for the above named defendants pursuant to 18 U.S.C. § 3771 and the Mandatory Victims Restitution Act of 1996. Attached to this notice, is an affidavit of Special Agent Tommy Hennesy with the Food and Drug Administration - Office of Criminal Investigations. The Affidavit is offered by the United States as evidence in support of the applicable amounts of Restitution for the named defendants to pay and the amounts to be paid each victim.

RICHARD R. ROPER
UNITED STATES ATTORNEY

*/s/ BM*
WILLIAM C. McMURREY
Assistant United States Attorney

United States Motion Downward Departure   Page - 1

> Texas State Bar Number 13811100
> 1100 Commerce St., Third Floor
> Dallas, Texas 75242-1699
> Telephone: 214.659.8600
> Facsimile: 214.767.4100

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing Notice was served on attorney for Defendants, United States Mail, on this the 3rd day of January, 2008.

/s/ BM
_____
WILLIAM C. McMURREY
Assistant United States Attorney

United States Motion Downward Departure   Page - 2

# AFFIDAVIT

I, Tommy R. Hennesy, Affiant, having been duly sworn, do hereby state and depose as follows: Affiant is a Special Agent employed by the U. S. Food and Drug Administration, Office of Criminal Investigations ("FDA-OCI"), Dallas, Texas, since October 2000. By virtue of my employment with the FDA-OCI, I am currently assigned to the North Texas Region, Dallas, Texas. I have participated in various criminal investigations involving numerous violations of the Federal Criminal Code, to include investigations involving the illegal diversion of pharmaceuticals within the health care industry. Additionally I have participated in various health care fraud in-service training conferences. Prior to my present employment with the FDA-OCI, I was employed as a Special Agent with the U.S. Secret Service for over eleven years. Prior to employment with Secret Service, I was a police officer for approximately five and one-half years.

Affiant is the case agent in charge of the investigation and prosecution of this conspiracy to commit healthcare, mail and wire fraud violations by Saran et al. In preparation of this affidavit, Affiant relied upon the information obtained from interviewing cooperating defendants, witnesses, informants, and other persons who have personal knowledge of the scheme and artifice to defraud pharmaceutical businesses. In preparation of this affidavit, Affiant also reviewed subpoenaed documentation from pharmaceutical manufactures, commercial wholesalers, group purchasing organizations

and financial institution records. In addition, Affiant reviewed evidence seized pursuant to authorized search warrants executed in case.

**Background Information**

Pharmacies, which provide medications exclusively to patients in institutional settings such as nursing homes, hospitals, and prisons, are commonly referred to as "institutional" pharmacies, "closed-door" pharmacies, or "own use" pharmacies. Drug manufacturers sell pharmaceuticals to institutional pharmacies at prices that may be fifty to eighty percent lower than the prices at which the manufacturers sell to their other customers, such as retail pharmacies or drug wholesalers. The primary reason that drug manufacturers offer institutional pharmacies low prices on pharmaceuticals is that the manufacturers recognize that insurance companies and the government, pay for many of the patients in institutions, and provide limited reimbursement for such pharmaceuticals.

In order to ensure that the sale of deeply discounted drugs to institutional pharmacies does not undermine the manufacturer's ability to sell to other purchasers at normal wholesale prices, manufacturers typically include what are known as "own-use" clauses in the contracts under which they sell drugs to institutional pharmacies. These clauses provide that drugs purchased by institutional pharmacies may be dispensed only to the patients in institutional settings that the "closed-door" pharmacies are servicing.

In order to simplify "own-use" contracting and eliminate the need for a pharmacy to sign individual contracts with numerous drug manufacturers offering institutional

Restitution Affidavit   Page - 2

pricing, a large number of institutional pharmacies join and/or contracted with drug buying groups known as group purchasing organizations ("GPOs"). Such GPOs include, but are not limited to, Premier, Innovatix, Oncology Express, Managed Healthcare Associates, Health Services Corporation of America, Pharmaceutical Buyers, Inc., Novation, and MedAssets.

These and other GPOs represent to wholesalers and manufacturers that pharmacies with GPO membership are eligible to obtain institutional pricing with the various drug manufacturers. These GPOs do not make drug purchases for their member pharmacies, but sign contracts with the manufacturers so that their members can purchase drugs at the institutional prices directly from the manufacturers or from full service wholesale drug companies, which sell the manufacturers' products. The contracts between buying groups and their member pharmacies typically include the type of "own-use," "institutional," or "closed-door" pharmacy clauses previously discussed in this section.

In 1987, the United States Congress recognized that there had been a proliferation of a wholesale sub market in prescription drugs, commonly known as the "diversion market." This diversion market involves individuals selling prescription drugs purchased at "contract prices" to retail outlet and wholesale operations. In some instances, these individuals create "institutional," "own use," or "closed-door" pharmacies, which are pharmacies in name only and are used solely or primarily to obtain prescription drugs at institutional prices and thereafter sell these drugs at substantial profits in violation of the

"own use" contract restrictions.

Not only do these diversion schemes create unfair competition in the marketplace, but the diverted drugs are often handled by individuals who have little or no pharmaceutical background or education. Moreover, the clandestine nature of the marketing of these drugs makes it difficult, if not altogether impossible, to trace the drugs in the event that a manufacturer has to recall the drugs because of problems with their safety or efficacy. Consequently, the American consumer cannot purchase drugs that have been sold in the diversion market with any assurance that the products are safe and effective. Indeed, because the operation of the diversion market prevents the effective control and monitoring of human drugs, these practices create an unacceptable risk that counterfeit, adulterated, misbranded, sub potent, or expired drugs will be sold to American consumers.

As a result of the aforesaid concerns, Congress enacted the Prescription Drug Marketing Act of 1987 ("PDMA"), which was incorporated into the Food and Drug Commerce Act ("FDCA") at 21 U.S.C. §§ 331(t), 333(b), and 353(c)-(e). The PDMA prohibits, with certain exceptions, the resale of prescription human drugs purchased by hospitals or health care entities.

The investigation revealed that Johar Saran and his co-conspirators, including but not limited to, Fred Word, David Kaiser, Leslie Davidoff, Cherie Word, Margie Molina, George Schmidt and Heather Elliott, were working together to fraudulently purchase

pharmaceuticals from commercial wholesalers. They did not legitimately qualify for contract pricing. The conspirators deceived the pharmaceutical industry in order to obtain an economic advantage, pricing substantially below wholesale acquisition cost (WAC) for resale at substantial. The conspirators resold the product on the grey, or secondary, market for significant profit.

**Restitution (Discount/Loss) Amounts**

The conspirators purchased pharmaceutical product from several different sources. The conspirators purchased the overwhelming majority of product from commercial wholesalers Morris& Dickson Co. L.L.C., Cardinal Health, Inc., AmerisourceBergin, Inc., and McKesson Corporation and manufacturer GlaxSmithKline, Inc. Each of the companies were duped and defrauded by the conspirators. The conspirators represented they were "closed door" pharmacies whose purchases were subject to the "own use" restrictions. The companies relied on the conspirators false representations. The companies sold product pursuant GPO contact pricing that was significantly below WAC. The companies were victims of the defendants' scheme. The victims provided sales data that included the loss information to the Affiant. A victim's loss was calculated by taking the difference between the WAC amount and the discounted amount. Stated another way, victim loss was calculated by taking the difference between the amount they should have paid, absent all false representations, and the discounted amount or economic advantage they were able to illegally obtain using the false representations.

Below I have calculated the victim loss in terms of dollars for each defendant. I have included the relevant time period attributable to the defendant. I have provided a break down by victim of the WAC and discount amount for each victim affected. My calculations are derived directly from the sales data provided by each victim.

1. Johar Saran

Saran's time period began on or about June 28, 1999, and continued through on or about September 21, 2005. The conspiracy purchased during this time period discounted product, by and through, the following company victims: Morris & Dickson Co., L.L.C., Cardinal Health, Inc., AmerisourceBergin, Inc., GlaxoSmithKline, Inc., and McKesson Corporation. The total amount of product purchased by the conspiracy during the relevant time period from the identified victims was $220,255,357 (WAC). The total value of product after the discount was $150,338,682 (PAID). The formula used to calculate loss was: [WAC amount <minus> the PAID amount] = DISCOUNT/LOSS amount. The total loss for purposes of restitution was $69,916,675 (DISCOUNT/LOSS). The total loss amount of $69,916,675 was divided among the victims as the sales data reflected for all those purchases of product for the time period, WAC amount, Paid amount and Discount/Loss amount as follows:

Morris & Dickson Co., L.L.C.
Purchases from January 1, 2000, through May 11, 2005.
WAC - $46,028,074
Paid - $31,728,826
Discount/Loss - $<u>14,299,248</u>

**Restitution Affidavit   Page - 6**

Cardinal Health, Inc.
Purchases from June 4, 2002, through August 26, 2005
WAC - $46,706,605
Paid - $33,735,509
Discount/Loss - $12,971,096

AmerisourceBergin, Inc.
Purchases from October 1, 2000, through August 29, 2005
WAC - $25,945,916
Paid - $14,870,588
Discount/Loss - $11,075,328

GlaxoSmithKline, Inc.
Purchases from January 1, 2000, through June 6, 2005
WAC - $ 13,158,761
Paid - $ 8,652,983
Discount/Loss - $4,505,778

McKesson Corporation (D & K Healthcare Resources, Inc.)
Purchases from March 29, 2001, through January 22, 2004
WAC - $88,416,001
Paid - $61,350,776
Discount/Loss - $27,065,225

    2. George Schmidt

Schmidt's time period began on or about June 28, 1999, and continued through on or about September 21, 2005. The conspiracy purchased during this time period discounted product, by and through, the following company victims: Morris & Dickson Co., L.L.C., Cardinal Health, Inc., AmerisourceBergin, Inc., GlaxoSmithKline, Inc., and McKesson Corporation. The total amount of product purchased by the conspiracy during the relevant time period from the identified victims was $220,255,357 (WAC). The total value of product after the discount was $150,338,682 (PAID). The formula used to

calculate loss was: [WAC amount <minus> the PAID amount] = DISCOUNT/LOSS amount.  The total loss for purposes of restitution was $69,916,675 (DISCOUNT/LOSS). The total loss amount of $69,916,675 was divided among the victims as the sales data reflected for all those purchases of product for the time period, WAC amount, Paid amount and Discount/Loss amount as follows:

Morris & Dickson Co., L.L.C.
Purchases from January 1, 2000, through May 11, 2005.
WAC - $46,028,074
Paid - $31,728,826
Discount/Loss - $14,299,248

Cardinal Health, Inc.
Purchases from June 4, 2002, through August 26, 2005
WAC - $46,706,605
Paid - $33,735,509
Discount/Loss - $12,971,096

AmerisourceBergin, Inc.
Purchases from October 1, 2000, through August 29, 2005
WAC - $25,945,916
Paid - $14,870,588
Discount/Loss - $11,075,328

GlaxoSmithKline, Inc.
Purchases from January 1, 2000, through June 6, 2005
WAC - $ 13,158,761
Paid - $ 8,652,983
Discount/Loss - $4,505,778

McKesson Corporation (D & K Healthcare Resources, Inc.)
Purchases from March 29, 2001 through January 22, 2004
WAC - $88,416,001
Paid - $61,350,776
Discount/Loss - $27,065,225

**Restitution Affidavit   Page - 8**

3. Cherie Word

Word's time period began on or about May 15, 2000, and continued through on or about September 21, 2005. The conspiracy, during this time period, purchased discounted product, by and through, the following company victims: Morris & Dickson Co., L.L.C., Cardinal Health, Inc., AmerisourceBergin, Inc., GlaxoSmithKline, Inc., and McKesson Corporation. The total amount of product purchased by the conspiracy during the relevant time period from the identified victims was $217,229,756 (WAC). The total value of product after the discount was $148,214,891 (PAID). The formula used to calculate loss was: [WAC amount <minus> the PAID amount] = DISCOUNT/LOSS amount. The total loss amount for purposes of restitution was $68,622,555 (DISCOUNT/LOSS). The loss amount of $68,622,555 was divided among the victims as the sales data revealed for all those purchases of product for the time period, WAC amount, Paid amount and Discount/Loss amount:

Morris & Dickson Co., L.L.C.
Purchases from January 1, 2001, through May 11, 2005.
WAC - $42,987,872
Paid - $29,636,625
Discount/Loss - $13,351,247

Cardinal Health, Inc.
Purchases from June 4, 2002, through August 26, 2005
WAC - $46,787,052
Paid - $33,735,509
Discount/Loss - $12,659,235

AmerisourceBergin, Inc.
Purchases from October 1, 2000, through May 31, 2005
WAC - $25,945,916
Paid - $14,870,588
Discount/Loss - $11,075,328

GlaxoSmithKline, Inc.
Purchases from January 1, 2001, through June 6, 2005
WAC - $ 13,092,913
Paid - $ 8,621,393
Discount/Loss - $4,471,520

McKesson Corporation (D & K Healthcare Resources, Inc.)
Purchases from March 29, 2001 through January 22, 2004
WAC - $88,416,001
Paid - $61,350,776
Discount/Loss - $27,065,225

    4. Fred Word

Word's time period began on or about January 29, 2001, and continued through on or about September 21, 2005. The conspiracy, during this time period, purchased discounted product, by and through, the following company victims: Morris & Dickson Co., L.L.C., Cardinal Health, Inc., AmerisourceBergin, Inc., GlaxoSmithKline, Inc., and McKesson Corporation. The total amount of product purchased by the conspiracy during the relevant time period from the identified victims was $206,631,044 (WAC). The total value of product after the discount was $142,548,244 (PAID). The formula used to calculate loss was: [WAC amount <minus> the PAID amount] = DISCOUNT/LOSS amount. The total loss amount for purposes of restitution was $63,690,492 (DISCOUNT/LOSS). The loss amount of $63,690,492 was divided among the victims as

**Restitution Affidavit   Page - 10**

the sales data revealed for all those purchases of product for the time period, WAC amount, Paid amount and Discount/Loss amount:

Morris & Dickson Co., L.L.C.
Purchases from January 29, 2001, through May 11, 2005.
WAC - $42,987,874
Paid - $29,636,625
Discount/Loss - $13,351,249

Cardinal Health, Inc.
Purchases from June 4, 2002, through August 26, 2005
WAC - $46,787,052
Paid - $33,735,509
Discount/Loss - $12,659,235

AmerisourceBergin, Inc.
Purchases from June 1, 2001, through May 31, 2005
WAC - $15,347,204
Paid - $9,203,941
Discount/Loss - $6,143,263

GlaxoSmithKline, Inc.
Purchases from January 29, 2001, through June 6, 2005
WAC - $ 13,092,913
Paid - $ 8,621,393
Discount/Loss - $4,471,520

McKesson Corporation (D & K Healthcare Resources, Inc.)
Purchases from March 29, 2001, through January 22, 2004
WAC - $88,416,001
Paid - $61,350,776
Discount/Loss - $27,065,225

    5. Margie Molina

Molina's time period began on or about June 1, 2001, and continued through on or about September 21, 2005. The conspiracy, during this time period, purchased

discounted product, by and through, the following company victims: Morris & Dickson Co., L.L.C., Cardinal Health, Inc., AmerisourceBergin, Inc., GlaxoSmithKline, Inc., and McKesson Corporation. The total amount of product purchased by the conspiracy during the relevant time period from the identified victims was $198,482,273 (WAC). The total value of product after the discount was $136,631,025 (PAID). The formula used to calculate loss was: [WAC amount <minus> the PAID amount] = DISCOUNT/LOSS amount. The total loss amount for purposes of restitution was $60,712,959 (DISCOUNT/LOSS). The loss amount of $60,712,959 was divided among the victims as the sales data revealed for all those purchases of product for the time period, WAC amount, Paid amount and Discount/Loss amount:

Morris & Dickson Co., L.L.C.
Purchases from January 1, 2002, through May 11, 2005.
WAC - $40,254,074
Paid - $27,458,666
Discount/Loss - $12,795,408

Cardinal Health, Inc.
Purchases from June 4, 2002, through August 26, 2005
WAC - $46,787,052
Paid - $33,735,509
Discount/Loss - $12,659,235

AmerisourceBergin, Inc.
Purchases from June 1, 2001, through May 31, 2005
WAC - $15,347,204
Paid - $9,203,941
Discount/Loss - $6,143,263

GlaxoSmithKline, Inc.
Purchases from June 1, 2001, through June 6, 2005
WAC - $12,730,400
Paid - $8,387,902
Discount/Loss - $4,342,498

McKesson Corporation (D & K Healthcare Resources, Inc.)
Purchases from June 1, 2001 through January 22, 2004
WAC - $83,363,643
Paid - $57,845,007
Discount/Loss - $25,518,636

      6. Leslie W. Davidoff

Davidoff's time period began in or about May, 2001, and continued through on or about September 21, 2005. The conspiracy, during this time period, purchased discounted product, by and through, the following company victims: Morris & Dickson Co., L.L.C., Cardinal Health, Inc., AmerisourceBergin, Inc., GlaxoSmithKline, Inc., and McKesson Corporation. The total amount of product purchased by the conspiracy during the relevant time period from the identified victims was $198,482,273 (WAC). The total value of product after the discount was $136,631,025 (PAID). The formula used to calculate loss was: [WAC amount <minus> the PAID amount] = DISCOUNT/LOSS amount. The total loss amount for purposes of restitution was $60,712,959 (DISCOUNT/LOSS). The loss amount of $60,712,959 was divided among the victims as the sales data revealed for all those purchases of product for the time period, WAC amount, Paid amount and Discount/Loss amount:

Morris & Dickson Co., L.L.C.
Purchases from January 1, 2002, through May 11, 2005.
WAC - $40,254,074
Paid - $27,458,666
Discount/Loss - $12,795,408

Cardinal Health, Inc.
Purchases from June 4, 2002, through August 26, 2005
WAC - $46,787,052
Paid - $33,735,509
Discount/Loss - $12,659,235

AmerisourceBergin, Inc.
Purchases from June 1, 2001, through May 31, 2005
WAC - $15,347,204
Paid - $9,203,941
Discount/Loss - $6,143,263

GlaxoSmithKline, Inc.
Purchases from January 1, 2002, through June 6, 2005
WAC - $ 12,730,400
Paid - $ 8,387,902
Discount/Loss - $4,342,498

McKesson Corporation (D & K Healthcare Resources, Inc.)
Purchases from June 1, 2001, through January 22, 2004
WAC - $83,363,643
Paid - $57,845,007
Discount/Loss - $25,518,636

7. David Kaiser

Kaiser's time period began on or about July 2, 2001, continued through on or about September 21, 2005. The conspiracy purchased discounted product, by and through, the following company victims: Morris & Dickson Co., L.L.C., Cardinal Health, Inc., AmerisourceBergin, Inc., GlaxoSmithKline, Inc., and McKesson Corporation. The

total amount of product purchased by the conspiracy during the relevant time period from the identified victims was $195,516,441 (WAC). The total value of product after the discount was $134,626,103 (PAID). The formula used to calculate loss was: [WAC amount <minus> the PAID amount] = DISCOUNT/LOSS amount. The total loss amount for purposes of restitution was $60,498,031 (DISCOUNT/LOSS). The loss amount of $ 60,498,031 was divided among the victims as the sales data revealed for all those purchases of product for the time period, WAC amount, Paid amount and Discount/Loss amount:

Morris & Dickson Co., L.L.C.
Purchases from January 1, 2002, through May 11, 2005.
WAC - $40,254,074
Paid - $27,458,666
Discount/Loss - $12,795,408

Cardinal Health, Inc.
Purchases from June 4, 2002, through August 26, 2005
WAC - $46,787,052
Paid - $33,735,509
Discount/Loss - $12,659,235

AmerisourceBergin, Inc.
Purchases from July 2, 2002, through May 31, 2005
WAC - $14,907,443
Paid - $8,951,898
Discount/Loss - $5,955,546

GlaxoSmithKline, Inc.
Purchases from January 1, 2002, through June 6, 2005
WAC - $ 12,730,400
Paid - $ 8,387,902
Discount/Loss - $4,342,498

**Restitution Affidavit   Page - 15**

McKesson Corporation (D & K Healthcare Resources, Inc.)
Purchases from July 2, 2001, through January 22, 2004
WAC - $80,837,472
Paid - $56,092,128
Discount/Loss - $24,745,344

8. Heather Elliott

Elliott's time period began on or about March 8, 2004, continued through on or about September 21, 2005. The conspiracy purchased discounted product, by and through, the following company victims: Morris & Dickson Co., L.L.C., and AmerisourceBergin, Inc. The total amount of product purchased by the conspiracy during the relevant time period from the identified victims was $4,935,707 (WAC). The total value of product after the discount was $3,386,600 (PAID). The formula used to calculate loss was: [WAC amount <minus> the PAID amount] = DISCOUNT/LOSS amount. The total loss amount for purposes of restitution was $1,549,107 (DISCOUNT/LOSS). The loss amount of $1,549,107 was divided among the victims as the sales data revealed for all those purchases of product for the time period, WAC amount, Paid amount and Discount/Loss amount:

Morris & Dickson Co., L.L.C.
Purchases from March 16, 2004, through May 10, 2005.
WAC - $4,029,431
Paid - $2,708,329
Discount/Loss - $1,321,102

AmerisourceBergin, Inc.
Purchases from March 8, 2004, through December, 2004
WAC - $906,271
Paid - $678,271
Discount/Loss - $228,005

### Conclusion

The total restitution (discount/loss) amounts for each defendant and each restitution (discount/loss) amounts for each victim were calculated using the electronic sales data provided by the victims. The discount /loss amounts represent the loss amounts for purposes of calculating the amount of restitution for each defendant and loss amount for each victim depending on the applicable time period.

I declare under penalty of perjury, that based upon information and belief, the foregoing is true and correct.

Tommy R. HENNESY
Special Agent, FDA-OCI
Dallas/Fort Worth, Texas


Subscribed and Sworn to before me this 3rd day of January 2008

Notary Public

My commission expires  2-14-2011



CYNTHIA NICHOLS
Notary Public
STATE OF TEXAS
My Comm. Exp. 02/14/2011

Restitution Affidavit   Page - 17